UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHARLES POLTENSON,<br>    Petitioner, | :<br>:<br>: |
| v. | :   Case No. 3:23cv479 (VLB) |
| UNITED STATES OF AMERICA<br>    Respondent. | :<br>: |

## ORDER OF DISMISSAL

The *pro se* Petitioner, Charles Poltenson, is currently confined at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury") of the Bureau of Prisons ("BOP"). He was prosecuted and sentenced in the Northern District of New York. Resp't Supp. Mem., Doc. No. 11.

On December 27, 2022, Petitioner filed a "Motion for Return of Monies Wrongfully Taken" in his criminal case, *United States of America, v. Poltenson,* 5:17CR309 (BKS) in the Northern District of New York. Pet., Doc. No. 1. Specifically, Petitioner claims that the BOP improperly took money from his inmate trust account and redirected the same funds to be applied towards the restitution owed to the victims of his crimes. Pet. at 1 (¶ 3), Doc. No. 1. The District Court for the Northern District of New York characterized the motion as a petition pursuant to 28 U.S.C. § 2241, and transferred this matter to the District of Connecticut. *See* Transfer Order at 1-2, Doc. No. 5.

For the reasons set forth below, the Court will deny the petition.

Case 3:23-cv-00479-VLB   Document 13   Filed 10/29/23   Page 2 of 15

I.    Background

On April 13, 2018, the District Court for the Northern District of New York sentenced Petitioner to three counts of Sexual Exploitation of a Child.  Order of Judgment, Doc. No. 44 at 1, *United States v. Poltenson*, 5:17CR309 (BKS) (N.D.N.Y). *See* Transfer Order at 2, Doc. No. 5.

The District Court imposed a term of imprisonment of 180 months per count, to run concurrently; 20 years of post-imprisonment supervised release per count, to run concurrently; a $300 special assessment; and an order for Defendant to pay $6,000 in restitution.  Order of Judgment at 1-7, Doc. No. 44, *Poltenson*, 5:17CR309 (BKS) (N.D.N.Y).  The District Court ordered that the $6,000 restitution be paid "in minimum monthly payments of at least 25% of the defendant's gross income while he is incarcerated and in monthly payments of $150 o[r] 10% of the defendant's gross monthly income, whichever is greater, after his release from prison." *Id.* at 7.  The District Court also directed that "[i]f at any time the defendant has the ability to pay restitution in full, he must do so immediately." *Id.*

After his payment of the $300 special assessment, Petitioner made 11 payments of $30 each through the Federal Bureau of Prisons' Inmate Financial Responsibility Program ("IFRP") between January 2019 to July 2021.[1]  Transfer Order at 2, Doc. No. 5.  On November 14, 2022, a restitution payment of $914.69 was

---

[1] The IFRP is a voluntary program designed to encourage inmates to contribute toward payment of court-ordered financial obligations while they are incarcerated. *Dunlea v. Fed. Bureau of Prisons*, 2010 WL 522715, at *1 (D. Conn. Feb. 8, 2010).

issued from Petitioner's account. *Id*. This amount was taken from Petitioner's "stimulus checks issued as a result of COVID-19." *See* Pet. at 2 (¶ 9), Doc. No. 1.

Petitioner claims that, against his wishes, his funds were "frozen" and a check was "processed" without his signature and sent as a payment to the Court to be paid towards his restitution. Pet. at 1 (¶ 3), Doc. No. 1. Respondent argues that Petitioner (1) failed to exhaust his available administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e;[2] (2) cannot prevail on the merits of his claim; and (3) fails to substantiate his request for payment deferral.[3] Resp't Supp. Mem., Doc. No. 11; Resp't Mem., Doc. No. 2.

---

[2] Although Respondent argues that the PLRA applies to this action, several district courts in the Circuit disagree. *See Zenquis v. Pullen*, No. 3:22-CV-1151 (SVN), 2023 WL 2931585, at *1 n.1 (D. Conn. Apr. 13, 2023) (declining to apply PLRA to medical deprivation claim under section 2241 as "[t]here is no statutory requirement that an inmate exhaust administrative remedies before filing a habeas petition pursuant to § 2241.") (citations omitted); *see also United States v. Basciano*, 369 F. Supp. 2d 344, 348 (E.D.N.Y. 2005) (finding "the statutory exhaustion requirement set forth under the [PLRA]" inapplicable to § 2241 petition); *Perez v. Zenk*, No. 04-CV-5069 (CBA), 2005 WL 990696, at *2 (E.D.N.Y. Apr. 11, 2005) (noting that the exhaustion requirement for § 2241 petitions "is not grounded in § 1997e, but rather in the common law"). *See also Dimartino v. Sage*, No. 3:21-CV-00498 (KAD), 2022 WL 124308, at *3 (D. Conn. Jan. 13, 2022) (noting the Second Circuit "confirmed that whether the PLRA applies to § 2241 petitions remains an unanswered question[,]" but applying PLRA habeas petition relief based on conditions of confinement).

[3] After this matter was transferred to the District of Connecticut, the Court afforded Respondent an additional opportunity to file a response to the Petition. Order, Doc. No. 9. After Respondent filed a supplemental response (Doc. No. 11), Petitioner filed his supplemental reply. Pet'r Supp. Reply, Doc. No. 12.

II.     **Discussion**

The Court may entertain a petition for a writ of *habeas corpus* from a person in custody challenging the legality of his detention on the ground that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  In the Second Circuit, federal inmates may petition for a writ of habeas corpus under section 2241 to challenge a condition of confinement. *See Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008).  This Court has previously held that an inmate's challenge to IFRP practices "is correctly brought pursuant to 28 U.S.C. § 2241." *Dunlea v. Fed. Bureau of Prisons*, 3:09CV2051CFD, 2010 WL 522715, at *1 (D. Conn. Feb. 8, 2010); *see also Eaton v. Recktenwald*, No. 13 CIV. 4446 KBF, 2014 WL 2200458, at *4 (S.D.N.Y. May 27, 2014) (concluding petition challenging restitution order was "properly construed as a § 2241 petition" and citing cases).

Section 2241 does not expressly require a petitioner to exhaust his or her administrative remedies, but "decisional law has superimposed such a requirement in order to accommodate principles of federalism." *United States ex rel. Scranton v. New York*, 532 F.2d 292, 294 (2d Cir. 1976).  Absent a showing of "cause and prejudice," federal prisoners must exhaust their administrative remedies prior to filing a petition for habeas relief. *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) ("the interests of judicial economy and accuracy are served by requiring that, absent a showing of cause

4

and prejudice, appeals proceed in the first instance through the federal agency review process.").

The burden of demonstrating exhaustion of administrative remedies rests with the section 2241 petitioner, *Spring v. Schult*, No. 908-CV-0531 (LEK), 2009 WL 3232183, at *1 (N.D.N.Y. Oct. 1, 2009), and failure to exhaust administrative remedies "results in a procedural default." *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009) ) (lack of exhaustion "results in a procedural default, which bars judicial review unless the petitioner persuades the Court that the failure to exhaust should be excused.") (citing *Carmona*, 243 F.3d at 634); *see also Woodford v. Ngo*, 548 U.S. 81, 92 (2006) ("In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default."). Thus, absent a showing of "cause and prejudice" a Federal inmate is required to exhaust his administrative remedies before seeking habeas relief pursuant to 28 U.S.C. § 2241. *See Carmona*, 243 F.3d at 634.

The Second Circuit has identified four bases to excuse administrative exhaustion in the habeas context: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003).

A. *Petitioner Failed to Exhaust the BOP Administrative Remedy Program*

To exhaust administrative remedies, federal inmates must comply with the BOP's Administrative Remedy Program, a four-step process for inmates who "seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Exhaustion of the BOP Administrative Remedy Program applies to Petitioner's challenge to his restitution payment made under the IFRP. *See, e.g.*, *Spring v. Schult*, No. 908-CV-0531 (LEK), 2009 WL 3232183, at *2 (N.D.N.Y. Oct. 1, 2009) (dismissing § 2241 petition challenging, *inter alia*, improper delegation of his restitution portion of his sentence to BOP and deprivations resulting from his failure to participate in IFRP); *see United States v. Diggs*, 578 F.3d 318 (5th Cir. 2009) (challenges to BOP programs, such as restitution payments under IFRP, must be exhausted through BOP administrative remedies); *United States v. Salamon*, No. 3:09-CR-30021-MAP, 2023 WL 5806744, at *4 (D. Mass. Aug. 8, 2023) (noting prisoner may file habeas petition after exhausting challenge to IFRP payment plan through BOP administrative remedies); *Wolters v. Thomas*, No. 3:CV-12-1115, 2014 WL 5325342, at *3 (M.D. Pa. Oct. 20, 2014) (dismissing petitioner's challenge to BOP's imposition of IFRP payments).

Under the BOP Administrative Remedy Program, an inmate must first attempt to resolve the issue informally with prison staff. 28 U.S.C. § 542.13. If the issue is not resolved, the inmate may then submit a Request for Administrative Remedy (a BP-9 form) to the Warden. *Id.* § 542.14. An inmate who is dissatisfied with the Warden's response may appeal to the appropriate BOP Regional Director

6

using a BP-10 form.  *Id.* § 542.15(a).  If the inmate is still dissatisfied, he or she may appeal to the General Counsel in the Central Office using a BP-11 form.  *Id.*

The Warden is required to respond within 20 days, the Regional Director within 30 days, and the General Counsel within 40 days.  *Id.* § 542.18.  If the inmate does not receive a response within the times allotted for reply, the inmate may consider the absence of a response to be a denial and may proceed to the next step of the process.  *Id.*

Here, the record shows that Petitioner's administrative remedies were clearly available to him.  Petitioner filed a grievance with the Warden and subsequently appealed the Warden's decision to the Northeast Regional Director.  *See* Resp't Mem. at 23, Doc. No. 2.  The response from the Northeast Regional Director specifically instructed Petitioner that he could file an appeal to the Office of the General Counsel within 30 calendar days of the date of the response denying his Regional Director appeal.  *Id.*

Petitioner makes no claim and does not cite evidence showing that he followed all of the steps to exhaust his BOP administrative remedies by filing an appeal to the BOP General Counsel.  Instead, he asserts that the BOP remedies are inadequate to provide relief, and that exhausting his BOP remedies would be futile and cause him undue prejudice.   Pet'r Supp. Reply at 2, Doc. No. 12.  Petitioner maintains that the administrative remedy program cannot afford him the return of his funds.  However, Petitioner's assertion of inadequate BOP remedies is wholly

conclusory. Petitioner has not demonstrated that the BOP could not provide him with any relief through its administrative remedy process.

Accordingly, the Court concludes that Petitioner has not shown "cause and prejudice" to excuse his failure to complete exhaustion of his BOP administrative remedies.[4]

B.  *Petitioner's Challenge to the Withdrawal of his Funds Lacks Merit*

Even if Petitioner's exhaustion requirement under section 2241 were excused, Petitioner could not prevail on the merits of his claim challenging his restitution payment. Respondent argues that the BOP acted in compliance with the sentencing court's judgment that required restitution "'in minimum monthly payments of at least 25% of [Petitioner's] gross income while he is incarcerated" except "[i]f at any time [Petitioner] has the ability to pay restitution in full, he must do so immediately." Order of Judgment at 7, Doc. No. 44, *Poltenson*, 5:17CR309 (BKS) (N.D.N.Y). The Court agrees.

Under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A *et seq.*, "[i]f a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply

---

[4] Petitioner also claims irreparable injury because "if the petition gets dismissed and the Court sends out the money, the[r]e is no way for [him] to recover such money should he win his §2241 petition, that is to say 'irreparable injury [would] occur without immediate judicial relief.'" *Id.* As noted, Petitioner has not sustained his burden to show the BOP could not have provided him with any relief.

8

the value of such resources to any restitution or fine still owed." 18 U.S.C. § 3664(n).[5] Courts within this district generally interpret section 3664(n) as "'trigger[ing] an automatic payment requirement' upon 'a defendant's receipt of a windfall during imprisonment.'" *See United States v. Kendrick*, No. 10-CR-6096-FPG, 2022 WL 1819390, at *4 (W.D.N.Y. June 3, 2022) (citing *United States v. Bratton-Bey*, 564 F. App'x 28, 29 (4th Cir. 2014) (summary order)); *United States v. Kelly*, 627 F. Supp. 3d 148, 150–51 (E.D.N.Y. 2022) (citing *Kendrick,* 2022 WL 1819390, at *4); *United States v. Othman*, No. 18-CR-98 (PKC), 2023 WL 4628820, at *1–2 (E.D.N.Y. July 19, 2023) (same). *See also United States v. Greywind*, No. 21-2658, 2023 WL 142508, at *1 (8th Cir. Jan. 10, 2023) ("Under its plain language, § 3664(n) triggers a mandatory payment requirement to satisfy restitution obligations still owed without a limitation as to whether an installment payment plan exists or the defendant is in default.") (citing *Kendrick*, 2022 WL 1819390, at *4 & n.4).

In support of his challenge, Petitioner claims compliance with his IFRP payments and argues that section 3664(n) cannot be invoked unless a defendant defaults on his payment obligation. Pet. at 3 (¶ 10), Doc. No. 1. Petitioner relies on

---

[5] Section 3613(c) provides: "an order of restitution . . . is a lien in favor of the United States on all of the defendant's property and rights to property as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986. The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b)." 18 U.S.C. § 3613(c). Under Section 3664(m)(1)(A), "[an] order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title; or ... *by all other available and reasonable means.*" 18 U.S.C. § 3664(m)(1)(A) (emphasis added).

*United States v. Hickman*, 330 F. Supp. 3d 921 (W.D.N.Y. 2018), which held "that, in order to seize funds from Defendant's inmate trust account to pay the outstanding fine, the Court must first conclude that Defendant has defaulted on his payment obligations."  *Id.* at 923-24.  This district court decision is immediately distinguishable because it applied to a fine rather than a restitution order.  Indeed, *Hickman* noted the difference between a fine that is ordered for "a punitive purpose" governed by a "statutory scheme" as opposed to an order of restitution that "'is imposed without consideration of the economic circumstances of a defendant.'"  *Id.* at 924 (quoting *United States v. Woodard*, No. 1:08-cr-191, 2016 WL 9406086, *3 (W.D. Mich. June 24, 2016)).  Moreover, as other courts recognize, the statutory plain language contains no "such precondition" for default, and it specifies that a defendant apply an economic windfall "to *any* restitution or fine *still owed.*"  *Kendrick*, No. 10-CR-6096-FPG, 2022 WL 1819390, at *4 (rejecting *Hickman* and explaining that "the plain language of Section 3664(n) persuades the Court that no statutory precondition of default exists");  *see also Othman,* No. 18-CR-98 (PKC), 2023 WL 4628820, at *2 n.4 (noting agreement "with the majority of courts that have considered this issue and found that nothing in Section 3664(n) suggests such a requirement."); *Kelly*, 627 F. Supp. 3d at 152 n.4 (declining to follow *Hickman* because "Congress intended 18 U.S.C. § 3664(n) 'to operate as an independent collection mechanism against an incarcerated defendant, without reference to the defendant's compliance with or default on his court-ordered payment schedule.'").

10

In addition, courts have approved payments from COVID-19 stimulus funds pursuant to section 3664n.  *See, e.g.*, *Kendrick*, No. 10-CR-6096, 2022 WL 1819390, at *5 ("[B]ecause Section 3664(n) affirmatively mandates that an incarcerated defendant apply 'substantial resources' to any fine that is 'still owed,' . . . Defendant was obliged to apply his economic impact payments to his outstanding monetary penalties."); *United States v. Schwartz*, No. 20-CR-6033, 2022 WL 537621, at *2 (W.D.N.Y. Feb. 23, 2022) (concluding that economic impact payments are "substantial resources" subject to section 3664(n) because "they are windfalls and sudden financial injections that have become suddenly available to Defendant." (internal quotation marks and brackets omitted)); *see also United States v. Toole*, No. 21-10651, 2022 WL 503736, at *2 (11th Cir. Feb. 18, 2022) (*per curiam*) (upholding district court decision that defendant was required to apply stimulus payment received under CARES Act to his restitution obligation as a "substantial resource" consistent under section 3664(n)) (additional citations omitted).

Petitioner claims that BOP staff did not have authority to withdraw his funds under the BOP Trust Fund/Deposit Fund Manual. Pet. at 2 (¶ 7).  But the provision he cites—"Authority to Withdraw Inmate Funds"—provides that inmate funds may be withdrawn without an inmate's consent "to comply with Federal court orders."[6]

---

[6] Section 10.1 of the BOP Trust Fund/Deposit Fund Manual provides that "[n]o funds are withdrawn from an inmate's account without his/her prior consent except [*inter alia*] … [t]o comply with Federal court orders." Trust Fund/Deposit Fund Manual at 87, available at https://www.bop.gov/policy/progstat/4500.12.pdf.

11

**As discussed, Petitioner is statutorily required to apply his economic windfall from his stimulus check to his court ordered restitution obligation under 18 U.S.C. § 3664(n).  The Order of Judgment imposed restitution in accordance with 18 U.S.C. § 3572(d), which requires immediate payment "unless, in the interest of justice, the court provides for payment … in installments[;]" and if restitution order provides for "other than immediate payment, the length of time … shall be the shortest time in which full payment can reasonably be made."  *Id.* at § 3572(d)(1)-(2).  Here, the Order of Judgment imposing installment payments of "*at least* 25% of [his] gross income while he is incarcerated" reflects that Petitioner's installment payment could be increased according to his economic circumstances.  *See* Order of Judgment, Doc. No. 44 at 7, *Poltenson*, 5:17CR309 (BKS) (N.D.N.Y) (emphasis added).**

**Furthermore, the BOP has "absolute discretion in determining how the IFRP will be applied to each inmate."  *Dunlea*, 2010 WL 522715, at \*2 ("The inmate's unit manager has sole discretion to determine whether an inmate's IFRP payments are commensurate with her ability to pay.  This decision is made on a case-by-case basis.") (citations omitted).  Indeed, the BOP Trust Fund/Deposit Manual, section "8.8 Encumbrance of Inmate Funds," sets forth:**

> **Encumbrance of inmate funds for various reasons is essential.  Careful consideration is given before any action; encumbrances are not made indiscriminately.  An encumbrance may be made for various reasons (e.g. to ensure inmates do not seriously deplete their funds before release, disciplinary measures, inmate's request, claims).  Encumbrances are at the Warden's discretion or the result of a disciplinary hearing sanction or notification of a pending Federal court order.  This authority is not delegated**

12

**below the Associate Warden. Funds the Warden encumbers may only be released upon his/her approval or upon inmate release.**[7]

**Thus, FCI Danbury Warden Pullen validly approved the encumbrance upon Petitioner's account.** *See, e.g., Kelly*, **627 F. Supp. 3d at 152 (finding BOP acted properly in accordance with its policies when it encumbered inmate's funds);** *see also United States v. Sabato*, **No. 3:02-cr-236 (VLB), 2021 WL 826751, at \*3 (D. Conn. Mar. 4, 2021) (rejecting argument that the government inappropriately seized inmate trust; noting "[t]he inmate trust account is just that a trust account, which is controlled by the BOP and can be encumbered at the Warden's discretion").**

**Accordingly, there is no merit to Petitioner's claim that his funds were improperly encumbered and applied towards his restitution payment.**

**C.** *Petitioner Has Not Sustained His Burden for a Payment Deferral*

**Petitioner seeks a deferral of his payments until after his term of incarceration.** *See* **Pet. at 1, 4 (¶ 15), Doc. No. 1. Petitioner's request must be denied. The District Court ordered Petitioner to pay "minimum monthly payments of at least 25% of [his] gross income** *while he is incarcerated***." Order of Judgment, Doc. No. 44 at 7,** *Poltenson***, 5:17CR309 (N.D.N.Y) (BKS) (emphasis added).**

**Under section 3664(k), the Court may adjust the payment schedule "as the interests of justice require." 18 U.S.C. § 3664(k). But Petitioner must provide notice to the Court and the Attorney General of any material change in his**

---

[7] **Trust Fund/Deposit Fund Manual at 71, available at https://www.bop.gov/policy/progstat/4500.12.pdf.**

"economic circumstances that might affect [his] ability to pay restitution." 18 U.S.C. § 3664(k). See also Order of Judgment, Doc. No. 44 at 1, *Poltenson*, 5:17CR309 (BKS) (N.D.N.Y) (ordering Petitioner that he "must notify the court and the United States attorney of material changes in economic circumstances").

Further, Petitioner bears the burden of demonstrating by a preponderance of the evidence his financial resources relevant to his restitution order. 18 U.S.C. § 3664(e); see *United States v. Hill*, 205 F.3d 1342, 1999 WL 801543, at *1 (6th Cir. Sept. 28, 1999) (summary order) (affirming denial of motion to defer because movant did not satisfy burden under 18 U.S.C. § 3664(e) to demonstrate a material change in economic circumstances took place and did not "attach any proof regarding his financial status or current income to the motion"); *United States v. Savage*, 466 Fed. App'x. 68, 70 (3d Cir. 2012) (affirming denial of motion to defer payment of restitution because movant failed to provide "any evidence or specific allegations about his economic circumstances, such as how much he previously earned per month, how much he earns now, or how much money he has in his prison account.").

Here, Petitioner has not submitted any evidence to show that he notified the Court of a material change in his economic circumstance. Nor has he submitted any evidence to support his request for deferment of his restitution payments. Accordingly, this request for deferral must be denied.

14

III.     **Conclusion**

For the foregoing reasons, the Petition is DENIED. The clerk is instructed to close this case. Any appeal from this order would not be taken in good faith.

_____
**Vanessa L. Bryant
United States District Judge**

**SO ORDERED at Hartford, Connecticut this 29th day of October 2023.**